UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ERIC J.,[1]

                         Plaintiff,

      v.

COMMISSIONER, Social Security
Administration,

                        Defendant.

_____

Case No. 3:20-cv-00732-MK

**OPINION
AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Eric J. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). *See* ECF No. 5. For the reasons that follow, the Commissioner's final decision is REVERSED and this case is REMANDED for an immediate calculation and payment of benefits.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI and DIB in July 2012 with an alleged onset date of November 1, 2003. Tr. 199, 206.[2] Plaintiff's claims were ultimately denied, and he sought judicial review. *See* Tr. 1468–94; *see also Eric J. v. Berryhill*, No. 3:16-cv-01932-MC. United States District Court Judge Michael McShane issued a stipulated remand order remanding the SSI portion of Plaintiff's claim to the agency for further proceedings in October 2017. Tr. 1495–1502. Upon remand, the Appeals Council vacated the Administrative Law Judge's ("ALJ") previous decision denying Plaintiff's claims, and remanded the case with instructions to properly consider the evidence of record and to obtain additional expert medical opinion, if necessary. Tr. 1503–07.

In December 2018, Plaintiff appeared for an additional administrative hearing. Tr. 1438–67. On February 27, 2019, an ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 1411–30. Because the Appeals Council did not assume jurisdiction, as prescribed by regulation, the ALJ's decision operates as the final decision of the Commissioner subject to this Court's review. *See* 20 C.F.R. §§ 404.984(a), 416.1484(a) ("[W]hen a case is remanded by a Federal court for further consideration, . . . the decision of the administrative law judge . . . will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case."). Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 36 years old on his alleged onset date. Tr. 224. He completed some college and had past relevant work as a musician. Tr. 230. Plaintiff attempted suicide in June 2012. Tr.

---

[2] "Tr." citations are to the Administrative Record. ECF Nos. 15–16.

312. Plaintiff alleges disability based on back problems, chronic pain, high blood pressure, atrial fibrillation, and oxygen deprivation. Tr. 229.

## LEGAL STANDARD

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation" (citation omitted)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation and internal quotations omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment does not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the

national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner

meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had

not engaged in substantial gainful activity since his alleged onset date. Tr. 1416. At step two, the

ALJ found that Plaintiff had the following severe impairments: obesity, degenerative disc

disease, schizoaffective disorder, seizure disorder, panic disorder, posttraumatic stress disorder

("PTSD"), generalized anxiety disorder, and atrial fibrillation. *Id.* At step three, the ALJ found

that Plaintiff did not have an impairment or combination thereof that met or medically equaled

the severity of a listed impairment. Tr. 1417. The ALJ found that Plaintiff had the RFC to

perform light work with the following limitations:

> [He could] frequently climb ramps and stairs, but never ropes,
> ladders or scaffolds. He [could] frequently stoop, balance, and
> occasionally crouch, crawl, and kneel. He [could] do simple routine
> tasks with a reasoning level of 1-2, with no public contact and
> occasional superficial contact with coworkers; he should avoid
> concentrated exposure to hazards.

Tr. 1419.

At step four, the ALJ found that Plaintiff had no past relevant work as defined by the

regulations. Tr. 1428. At step five, the ALJ found, in light of Plaintiff's age, education, work

experience, and RFC, a significant number of jobs existed in the national economy such that

Plaintiff could sustain employment despite his impairments. Tr. 1429. The ALJ thus found

Plaintiff was not disabled within the meaning of the Act. Tr. 1430.

## DISCUSSION

Plaintiff asserts that remand is warranted for three reasons: (1) the ALJ erred in weighing

the medical opinion evidence; (2) the ALJ erred by improperly rejecting Plaintiff's subjective

symptom testimony; and (3) the ALJ failed to identify a legally sufficient basis to reject the lay witness statement. The Court addresses each argument in turn.

## I.    Medical Evidence

Plaintiff contends that the ALJ improperly assessed the medical evidence of record. Pl.'s Op. Br. 12–16, ECF No. 17. The ALJ is responsible for resolving conflicts in the medical record, including conflicting doctors' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The law distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. §§ 404.1527, 416.927.[3] The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

A treating physician's opinion that is not contradicted by the opinion of another doctor can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (citation omitted). Where a treating physician's opinion is contradicted, however, the ALJ must provide "specific, legitimate reasons" for discrediting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). Similarly, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31. Lastly, "[a]n ALJ 'may reject the

---

[3] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. §§ 404.1527, 416.927.

opinion of a non-examining physician by reference to specific evidence in the medical record.'"

*Jason W. v. Comm'r of Soc. Sec. Admin.*, No. 6:18-cv-00483-JR, 2018 WL 6701273, at *2 (D.

Or. Dec. 20, 2018) (citing *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)).

### A.    Daryl Birney, Ph.D.

Dr. Birney served as Plaintiff's examining psychologist. Tr. 325. Dr. Birney performed

two psychodiagnostic evaluations in 2012 and 2015. *Id.*; Tr. 1371. In his 2012 evaluation, Dr.

Birney diagnosed Plaintiff with schizoaffective disorder, PTSD, generalized anxiety disorder,

and panic disorder. Tr. 327. He also concluded Plaintiff had compromised attention,

concentration, and judgment. *Id.* He assessed Plaintiff's Global Assessment of Functioning Scale

("GAF")[4] to be at 35. *Id.* In his 2015 evaluation, Dr. Birney diagnosed Plaintiff with

schizoaffective disorder, PTSD, unspecified neurocognitive disorder (with seizures), generalized

anxiety disorder, and panic disorder. Tr. 1373. He opined Plaintiff was essentially unchanged

from Plaintiff's 2012 evaluation. *Id.*

The ALJ assigned Dr. Birney's opinions partial weight. Tr. 1427. While the ALJ

accepted the doctor's opinion as being generally supported by the evidence in the record, the

---

[4] While relevant, a "GAF score does not determine disability." *Davis v. Astrue*, No. 1:10-cv-01452-CL, 2012 WL 4005553, at *9 (D. Or. June 12, 2012), *adopted*, 2012 WL 3614310 (D. Or. Aug. 21, 2012) (internal citation omitted). "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). According to the Fourth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), "a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.' A GAF score between 51 to 60 describes 'moderate symptoms' or 'any moderate difficulty in social, occupational, or school functioning." *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (quoting DSM-IV); *but see Skelton v. Comm'r of Soc. Sec.*, 2014 WL 4162536, at *11 (D. Or. Aug. 18, 2014) (explaining that the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders abandoned the GAF scale for several reasons, including "its lack of conceptual clarity" and "questionable psychometrics in routine practice").

ALJ did not give full weight because "the severity opined in the first GAF score and in the second medical source statement [were] not entirely supported." *Id.*

The Commissioner asserts that Dr. Birney's opinion was not supported by the objective findings of the medical record. Def.'s Br. 4. Specifically, the Commissioner claims that the medical record did not support Plaintiff's allegation that his seizures had increased in frequency or that Plaintiff experienced panic attacks and hallucinations. Tr. 1427.

An independent review of the record reveals that Dr. Birney's opinion was consistent with the medical record. For example, with regard to Plaintiff's hallucinations, the record indicates Plaintiff experienced hallucinations in 1999 and 2000, with a break in hallucinations for several years. *See* Tr. 643 (November 2005: reporting to primary care having no hallucinations for "years"). Then, in 2012, Plaintiff's hallucinations reappeared. *See* Tr. 80, 340. Reports of additional hallucinations followed in 2013 and 2014 and Plaintiff's primary care discussed medication options. *See* Tr. 980, 1211–12, 1346–47. This evidence is entirely consistent with Dr. Birney's 2012 and 2015 examinations. *See* Tr. 325–27, 1371–73.

The Commissioner also cites to Plaintiff's improvement as an additional reason to reject Dr. Birney's opinion. Def.'s Br. 4. However, a review of the record shows that, although Plaintiff's impairments at some points improved, his symptoms waxed and waned throughout the relevant period and his impairments persisted despite the evolving cocktail of medications prescribed to him. *See, e.g.*, Tr. 329, 416, 424, 430, 805–810, 1070, 1103. For example, in 2012, Plaintiff was treated with oxycodone, lisinopril, ranitidine, digoxin, gabitril, ibuprofen, methocarbamol, metoprolol, clonazepam, diazepam, methandone, stool softener, and asprin, yet nonetheless presented with depression, anxiety, and back pain. Tr. 329, 415.

The Ninth Circuit has repeatedly reiterated that an ALJ should exercise caution when relying on purported improvement in mental health:

> As we have emphasized while discussing mental health issues, it is error to reject [evidence] merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

As such, the ALJ failed to supply a specific and legitimate reason to reject Dr. Birney's opinion.

### B.    Joshua Boyd, Psy.D.

Dr. Boyd was a non-examining psychologist. Tr. 94. The doctor opined in September 2012 that Plaintiff would need special supervision to sustain an ordinary routine at work and would need to take breaks every two hours to maintain pace. *Id.* The ALJ gave the opinion no weight, finding it inconsistent with Plaintiff's activities of daily life. Tr. 1426. The Commissioner argues this was a proper reason to reject the opinion. Tr. 1426.

Inconsistency between a doctor's opinion and a claimant's daily activities can constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). When assessing whether a claimant's reported activities are inconsistent with a provider's opinions, however, an ALJ errs where that ALJ fails to base such a determination on a holistic review of the record. *See id.* ("[A] holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities.").

The ALJ failed to take such a holistic view of the record here. For example, although the ALJ cited Plaintiff's ability to care for his parents, attend group therapy, shop for groceries, and

drive his car, the Court finds such limited activities are consistent with Dr. Boyd's opinion. The doctor's report noted Plaintiff had moderate difficulty maintaining concentration, persistence, and pace and would perform best in an environment away from the general public. Tr. 94–95. The ALJ failed to explain how Plaintiff's listed daily activities are inconsistent with those limitations. As such, Plaintiff's activities of daily living were not a specific and legitimate reason to reject Dr. Boyd's opinion. *See Ghanim*, 763 F.3d at 1162 (holding that the ability to complete "some basic chores and occasionally socialize[]" is not a specific and legitimate reason to discount a doctor's opinion where a "holistic review of the record" showed the claimant "relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments"). Thus, the ALJ failed to supply legally sufficient reasons for rejecting Dr. Boyd's opinion that Plaintiff would need special supervision to sustain an ordinary routine at work and would need to take breaks every two hours to maintain pace.

## C.    Luke Johnson, LCSW.

 Luke Johnson served as Plaintiff's treating Licensed Clinical Social Worker ("LCSW Johnson"). Tr. 810. In his March 2013 medical questionnaire, LCSW Johnson explained he saw Plaintiff on a weekly basis, beginning in June 2012. Tr. 805. LCSW Johnson estimated Plaintiff's GAF at 50, and noted that Plaintiff had a "marked" limitation in virtually all functional areas. Tr. 805–10. LCSW Johnson also concluded that Plaintiff's affect was flat and depressed. Tr. 805.

The ALJ assigned LCSW Johnson's opinion partial weight. Tr. 1428. While the ALJ accepted LCSW Johnson's opinion as being generally supported by the record as a whole, the ALJ did not give full weight because "the severity described [was] not entirely supported by the medical records." *Id.* The Commissioner argues this was proper because LCSW Johnson's

opinion was (1) not a medically acceptable source under agency regulations because Johnson is a
LCSW; (2) inconsistent with the medical record; and (3) appeared to be based on Plaintiff's
subjective reports rather than objective medical evidence.

### 1.     Medically Acceptable Source

The Commissioner asserts the ALJ properly rejected LCSW Johnson's opinion because
LCSW Johnson is not a medically acceptable source under agency regulations. Tr. 1427. The
regulations set forth "guidelines for the Commissioner to follow when weighing conflicting
opinions from acceptable medical sources, while containing no specific guidelines for the
weighing of opinions from other sources. This permits the Commissioner to accord opinions
from other sources less weight than opinions from acceptable medical sources." *Gomez v.
Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996). The ALJ may discount "other sources" for germane
reasons, but opinions from other sources may still be used to show the severity of a person's
impairment and how that affects that person's ability to work. 20 C.F.R. §§ 404.1527(d)(1),
416.927(d)(1). Put differently, the ALJ is permitted to reject LCSW Johnson's opinion, but the
fact that LCSW Johnson is an "other source" by itself is an insufficient reason to reject LCSW
Johnson's opinion.

### 2.     Inconsistency with the Medical Record

The Commissioner next argues that LCSW Johnson's opinion was inconsistent with the
medical records. Def.'s Br. 6. As the Commissioner correctly notes, inconsistency with medical
evidence is a germane reason to discount the opinions of sources who are not on the list of
acceptable medical sources. *See Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012). Here,
however, the ALJ's rejection of LCSW Johnson's opinion was improper. LCSW Johnson's
opinion was consistent with the medical record during the relevant period. *See* Tr. 342 (June

2012: Primary care opining mood and anxiety disorders); Tr. 397 (July 2012: Primary care

opining depression and anxiety); Tr. 1372 (September 2012: Dr. Birney opining Plaintiff's affect

flat and mood depressed); Tr. 383 (November 2012: Primary care opining depression and

anxiety); Tr. 380 (December 2012: Primary care opining anxiety); Tr. 1021 (January 2013:

Primary care opining depression and anxiety). As such, the medical record was not a germane

reason to reject LCSW Johnson's opinion.

### 3.    Subjective Reports

Lastly, the Commissioner argues the ALJ properly rejected LCSW Johnson's opinion

because it appeared to be based on the Plaintiff's subjective reports and not on objective medical

evidence. Tr. 1427. Although an ALJ may in some circumstances discount an opinion that relies

on rejected subjective reports, the ALJ's rejection of LCSW Johnson's opinion here was

improper for two reasons. First, the Ninth Circuit has explained that self-reports in the psychiatry

context differ from other treatment settings. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir.

2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in

other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as

on the clinician's observations of the patient. But such is the nature of psychiatry. . . . Thus, the

rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner

to opinions regarding mental illness.").

Second, a review of LCSW Johnson's treatment records demonstrates that his opinion

was based on detailed reports, as well as clinical observations and findings. *See, e.g.*, Tr. 1055

(November 2012: reporting increased anger and sorrow and encouraging Plaintiff to do self-care

exercises); Tr. 1058 (November 2012: reporting depression and observing sadness and anger);

Tr. 1070 (December 2012: reporting low self-esteem and discussing poor self-image); Tr. 1073

(January 2013: helping Plaintiff work through feelings of guilt stemming from abuse as a child);

Tr. 1076 (January 2013: helping Plaintiff process emotions through writing exercises); Tr. 1103

(March 2013: reporting depression and encouraging Plaintiff to share feelings of anger and pain);

Tr. 1106 (March 2013: reporting frustration). The Ninth Circuit has held:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted).

As such, Plaintiff's self-reports to LCSW Johnson were not a specific and legitimate reason to

reject LCSW Johnson's opinion.

In sum, the ALJ failed to supply legally sufficient reasons for rejecting the medical

opinions of Drs. Birney and Boyd as well as the opinion of LCSW Johnson.

## II.    Subjective Symptom Testimony

Plaintiff assigns error to the ALJ's evaluation of his subjective symptom testimony. Pl.'s

Op. Br. at 16–20, ECF No. 17. When a claimant has medically documented impairments that

could reasonably be expected to produce some degree of the symptoms complained of, and the

record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's

testimony about the severity of her symptoms only by offering specific, clear and convincing

reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion

that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony

is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*,

12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit

the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's

finding regarding the claimant's subjective symptom testimony is "supported by substantial

evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278

F.3d 947, 959 (9th Cir. 2002).

      Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is

not an examination of an individual's character," and requires that the ALJ consider all the

evidence in an individual's record when evaluating the intensity and persistence of symptoms.[5]

SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire

case record, including the objective medical evidence; an individual's statements about the

intensity, persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in the

individual's case record." *Id.* at *4.

      Here, the ALJ rejected Plaintiff's subjective symptom testimony. Tr. 1425. The

Commissioner asserts the ALJ supplied two valid rationales that undermined Plaintiff's

subjective complaints: (A) an inconsistency with the medical record; and (B) an inconsistency

with his activities of daily living.

## A.    Medical Record and Improvement

      As noted, the Commissioner asserts that the ALJ properly discounted Plaintiff's

allegations because they were inconsistent with the objective medical evidence. Def.'s Br. 7–9,

ECF No. 21. In some circumstances, an ALJ may reject subjective complaints where the

claimant's "statements at her hearing do not comport with objective medical evidence in her

---

[5] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, 2017 WL 5180304, at *1–2 (S.S.A. Oct. 25, 2017).

medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, especially in the mental health context, an ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects long-standing psychological disability. *See Ghanim*, 763 F.3d at 1164; *see also Garrison*, 759 F.3d at 1017. Moreover, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

An independent review of the record establishes that Plaintiff's subjective complaints are amply supported in the record. For example, a September 2012 treatment statement reflects that Plaintiff presented as mildly agitated, anxious, depressed, with a history of suicidal ideation, and with feelings of hopelessness. Tr. 326. A March 2013 treatment note reflects that Plaintiff presented as depressed with a flat affect and feelings of guilt and worthlessness. Tr. 805–06. In December 2014, treatment notes reflect that Plaintiff reported hurt, shame, and anger. Tr. 1283. In March 2016, treatment notes reported Plaintiff had chronic pain for many years. Tr. 1884. In October 2018, Plaintiff reported having a hard time keeping up with responsibilities, as well as increased stress, anger, and fatigue. Tr. 2265. In March 2018, treatment notes reflect that Plaintiff felt resignation, fear, and anger. Tr. 2182. As such, the ALJ failed to supply legally sufficient reasoning to reject Plaintiff's testimony on his subjective complaints alone.

The Commissioner asserts that Plaintiff's course of treatment provided a clear and convincing reason to reject Plaintiff's testimony. Tr. 1428. The effectiveness of treatment is a relevant factor an ALJ may consider when evaluating subjective symptom testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv–v), 416.929(c)(3)(iv–v). However, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. Rather, reports of improvement in the mental health context "must be interpreted

with an understanding of the patient's overall well-being and the nature of her symptoms." *Id*.

Moreover, the Ninth Circuit has cautioned against drawing inferences based upon reports of

improvements during mental health treatment. *See id*. at 1017–18; *see also Holohan v.*

*Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001) ("[S]tatements must be read in context of the

overall diagnostic picture he draws. That a person who suffers from severe panic attacks,

anxiety, and depression makes some improvement does not mean that the person's impairments

no longer seriously affect her ability to function in a workplace.").

 An independent review of those treatment notes fails to support the Commissioner's

contention that Plaintiff's symptoms improved. When viewed in context, those records reveal

that while at times Plaintiff made limited improvement, his mental health impairments

consistently affected his ability to function. Plaintiff attempted suicide in June 2012 and

continued to suffer from depression years after. Tr. 312, 1366. In June 2014, Plaintiff reported

feeling sorrowful, insecure, and pessimistic about his future. Tr. 1346, 1343. While in July 2014,

Plaintiff reported feeling better, Tr. 1354, by August 2014 he again reported feelings of fear,

anger, and other negative thoughts. Tr. 1362. Then in September 2014, Plaintiff reported feeling

increasingly depressed. Tr. 1366.

 Accordingly, Plaintiff's response to treatment was not a clear and convincing reason to

reject his subjective symptom testimony. *See Garrison*, 759 F.3d at 1017 ("Cycles of

improvement and debilitating symptoms are a common occurrence, and in such circumstances it

is error for an ALJ to pick out a few isolated instances of improvement over a period of months

or years and to treat them as a basis for concluding a claimant is capable of working."); *see also*

*Ghanim*, 763 F.3d at 1162 (noting that the "fact that a person suffering from depression makes

some improvement does not mean that person's impairment no longer seriously affects his ability to function in the workplace" (citation, internal quotations, and bracketing omitted)).

As such, the medical record in this case was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

**B.    Activities of Daily Living**

The Commissioner contends the ALJ properly rejected Plaintiff's testimony based upon his activities of daily living. Def.'s Br. 9–10. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) where the activities "contradict [a claimant's] testimony"; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

The Commissioner cites Plaintiff's ability to complete household chores, drive his father to appointments, and go to the store as being contrary to his other claims and asserts those activities conflict with Plaintiff's testimony. Def.'s Br. 9; Tr. 1420. The Ninth Circuit, however, has consistently held that such a modest level of activity is not sufficient to reject subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall

disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

Moreover, the ALJ's discussion of Plaintiff's daily activities failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Dodrill*, 12 F.3d at 918. As this Court has recently observed, an "ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *David J. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-00647-MK, 2021 WL 3509716, at *4 (D. Or. Aug. 10, 2021) (citation omitted). In other words, other than generally summarizing Plaintiff's activities, the ALJ failed to explain how any of the listed activities undermined his subjective symptom testimony. Therefore, this was not a clear and convincing reason to reject Plaintiff's testimony. *See id.*

In sum, the ALJ failed to supply clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

**III.    Lay Witness Testimony**

Plaintiff assigns error to the ALJ's evaluation of the lay witness statements. Pl.'s Op. Br. 20–21, ECF No. 17. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's

symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony can be harmless. *Molina*, 674 F.3d at 1121–22.

The record contains a lay witness statement submitted by Plaintiff's mother, Martha J. Tr. 237–245. The ALJ assigned "partial weight" to the statement but did not assign full weight because "the severity described is not entirely supported by the medical record." Tr. 1428.

Inconsistency with the medical record is a germane reason to exclude a lay witness statement from consideration. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). However, because Martha J.'s statement is consistent with record for the reasons described *supra* in sections I and II, the ALJ did not have a valid reason for excluding the statement. Accordingly, the ALJ's decision to assign "partial weight" to the lay witness statement was harmful error.

## IV.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be

required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141) (internal quotations omitted).

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony, portions of the lay witness statements, and the medical opinion evidence.

As to the second requisite, the Commissioner asserts that remanding for an award of benefits would be inappropriate based upon a lack of medical evidence. From a practical standpoint, however, Plaintiff has already undergone one consultative examination and the Court finds remanding to further develop the record in that regard would serve little useful purpose. *See Garrison*, 759 F.3d at 1021 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." (citation omitted)).

As to the third requisite, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Dr. Boyd opined that Plaintiff had limitations in his ability to sustain concentration and persistence during normal workday, noting "[Plaintiff would] need special supervision to sustain [an] ordinary routine" and that "[Plaintiff would] need to take breaks every 2 [hours] to maintain pace[.]" Tr. 94. Further, LCSW Johnson opined that

Plaintiff's impairments would lead to excessive absences of "more than three days per month." Tr. 810.

The Vocational Expert ("VE") testified that if an individual was unable to "stay on task or perform their job tasks without extra supervision and if that was ongoing over time . . . that would [not] be consistent with competitive employment." Tr. 1464. That result would be the same if that person were missing two or three days of work per month. Tr. 1465. Thus, in fully crediting Dr. Boyd's opinion and LCSW Johnson's opinion as true, the ALJ would be required to find Plaintiff disabled on remand. *See Clester v. Comm'r of Soc. Sec.*, No. 09-cv-765-ST, 2010 WL 3463090, at \*8 (D. Or. Aug. 3, 2010) (crediting doctor's opinion that the claimant "had *marked limitations* in her ability to . . . *maintain regular attendance, and be punctual within customary tolerances*" combined with VE testimony that "individuals who miss *two or more* days on a chronic basis are not competitively employable" warranted remanding for an immediate calculation and award of benefits) (emphasis added), *adopted*, 2010 WL 3463078 (D. Or. Aug. 31, 2010); *see also Hazen v. Colvin*, 2015 WL 1186776, at \*7 (E.D. Wash. Mar. 16, 2015) (crediting doctors' opinions that the claimant had "marked limitations and an inability to sustain basic work activities" and remanding for an immediate calculation and award of benefits).

Lastly, considering the record as a whole, the Court has no basis to doubt that Plaintiff is disabled under the Act. As such, the Court concludes the proper remedy in this case is to remand for a calculation of benefits. *See Garrison*, 759 F.3d at 1022–23.

///

///

///

## CONCLUSION

For the reasons discussed above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 19th day of October 2021.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge